UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| NORMAN CERCOPLY, | ) | Civil Action No.: 4:15-cv-0729-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. A telephone conference was held on September 22, 2016.

## I.  RELEVANT BACKGROUND

### A.     Procedural History

Plaintiff filed an application for DIB on February 26, 2008, alleging inability to work since May 20, 2007. His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on September 3, 2009, at which time the Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued a partially-favorable decision on November 19, 2009, finding that Plaintiff was not disabled prior to September 21, 2009. (Tr.18-23). Plaintiff filed a request for review of the ALJ's decision, which

the Appeals Council denied on June 24, 2011, making the ALJ's decision the Commissioner's final decision. (Tr. 1-4). Plaintiff filed an action in this court on August 18, 2011. The court reversed the Commissioner's decision and remanded the case in an order dated February 22, 2013. See Cercoply v. Commissioner of Social Security, No. 4:11-cv-2186-TER (D.S.C. Feb. 22, 2013). On April 15, 2013, the Appeals Council affirmed the decision that Plaintiff is disabled commencing September 21, 2009, and remanded to the ALJ for "further proceedings consistent with the order of the court." (Tr. 463). The ALJ held a second hearing on November 21, 2013, and issued a written decision on March 19, 2014, finding Plaintiff was not disabled for the period of May 20, 2007, through September 20, 2009. (Tr. 402-409). The Appeals Council denied Plaintiff's request for review. (Tr. 384-386, 390-394). This appeal followed.

**B.     Plaintiff's Background and Medical History**

    **1.     Introductory Facts**

Plaintiff was born on September 21, 1954, and was 52 years old at the time of the alleged onset. (Tr. 131, 418). Plaintiff completed his education through high school and has past relevant work experience as a manager, subcontractor, construction superintendent, and carpenter. (Tr. 222, 418). Plaintiff alleges disability due to blindness in his right eye, additional visual problems and depression. (Tr. 129-134, 153).

**C.     The Administrative Process and the ALJ's Decision**

In the decision of March 19, 2014, the ALJ made the following findings of fact and conclusions of law:

    1.     The claimant last met the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 20, 2007, through September 20, 2009 (20 CFR 404.1571 et seq.).

3. During the relevant period, the claimant had the following severe impairments: retinal detachment of the right eye and proliferative vitreoretinopathy (20 CFR 404.1520(c)).

4. During the relevant period, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that during the relevant period, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant was precluded from jobs requiring climbing ropes and ladders and he must avoid moving machinery. He is unable to perform jobs requiring depth perception or use of vision of the right side, is limited to occasional near visual acuity and no working with crowds of people.

6. During the relevant period, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 21, 1954, and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security

> Act, at any time from May 20, 2007, the alleged onset date through September 20, 2009 (20 CFR 404.1520(g)).

(Tr. 402-409).

## II. DISCUSSION

The Plaintiff argues that the ALJ erred in his decision, and that reversal and remand are appropriate in this case. Specifically, Plaintiff raises the following issues in his brief, quoted verbatim:

I. The ALJ reversibly erred by refusing, under the guise of "interpretation," to comply with the order of the district court.

II. Even had the ALJ not erroneously exceeded the scope of this Court's remand order, his determination that Mr. Cercoply can perform the newly identified jobs cannot be deemed supported by substantial evidence, as it is based upon an improper rejection of the evidence from Dr. Hecker as well as other errors.

Pl. Brief 1.

The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.     LEGAL FRAMEWORK

#### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. See, e.g., Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. See 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); see Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d) (5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir.2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. Hall v. Harris, 296 F.3d 287, 264–65 (4th Cir.1981); see generally Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. See id.; Richardson v. Perales, 402 U.S.

389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); Walls, 296 F.3d at 290 (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." Vitek v. Finch, 438 F.2d 1157, 1157–58 (4th Cir.1971); see Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir.1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390, 401; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir.2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. See Vitek, 438 F.2d at 1157–58; see also Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972).

**B.     ANALYSIS**

   **1.     The ALJ's Compliance with District Court Order**

Plaintiff first argues that the ALJ erred by going outside the scope of this court's remand order. In the first action before this court, Plaintiff argued that the ALJ erred in failing to resolve a conflict between the testimony of the vocational expert (VE) and the Dictionary of Occupational Titles (DOT). (Tr. 447). In the first action, the ALJ established the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). He is unable to perform work requiring climbing ropes or

> ladders, and must avoid moving machinery. He is unable to perform jobs requiring depth perception, use of vision on the right side, fine visual acuity and working within crowds of people.

(Tr. 20-21). In response to the hypothetical posed to him with these same restrictions, the VE identified three jobs Plaintiff could perform: machine tender, sorter and garment sorter. (Tr. 47-48). The VE testified specifically that these jobs did not require fine visual acuity. (Tr. 48). Counsel for Plaintiff submitted a post-hearing brief to the ALJ in which he "pointed out that the DOT/SCO job descriptions for the jobs cited the the VE showed that 'near acuity' was required either 'frequently' or 'constantly.'" (Tr. 224-40). The ALJ did not address this argument in his hearing decision and found, based on the VE's testimony, that jobs existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 23).[3]

On appeal to this court, Defendant conceded that a conflict existed with respect to two of the jobs identified by the VE, machine tender and sorter, but not with respect to the garment sorter position. (Tr. 453). Defendant argued that there was no conflict between the hypothetical relied upon by the VE, identifying a worker "unable to perform jobs requiring . . . fine visual acuity," and the DOT's requirement for garment sorter of "near vision, or clarity of vision at 20 inches or less." (Tr. 450). This court found that this argument amounted to post-hoc rationalization, which was not within the ALJ's decision, and, thus, remanded the case "for an explanation as to the conflict, and/or finding by the ALJ as to whether the occupation of garment sorter is in conflict with the testimony of the VE. <u>If the ALJ finds there is a conflict, he should resolve the conflict or find that</u>

---

[3]This finding was made with respect to the period from May 20, 2007, the alleged onset date, to September 20, 2009, the day before Plaintiff turned fifty-five and his age category changed. (Tr. 23). Plaintiff was awarded benefits beginning September 21, 2009. (Tr. 24).

<u>the Plaintiff is unable to perform any jobs in the national economy.</u>" (Tr. 454 (emphasis added)).

The Appeals Council then vacated the Commissioner's final decision and remanded the case for further proceedings consistent with this court's order. (Tr. 461-465). The Appeals Council instructed the ALJ to offer Plaintiff the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision on the issue of disability. (Tr. 464).

A second hearing was held on November 21, 2013. (Tr. 415-432). The ALJ asked the VE to consider an individual who: (1) was 52 years old and had a 12th grade education; (2) could perform light work but was unable to perform work climbing ropes or ladders; (3) had to avoid moving machinery; (4) could not work with crowds of people; and (5) could not perform jobs requiring depth perception, use of vision on the right side and fine visual acuity. (Tr. 420). The VE asked the ALJ to repeat the visual limitations, and at that time the ALJ added that he was restricting the individual to occasional fine visual acuity because Plaintiff's doctor said that Plaintiff had "significantly" less fine visual acuity than the average person. (Tr. 420-421). The VE noted that the DOT describes fine visual acuity as near acuity, which was essentially things involving reading and close work. (Tr. 421). Given this, the VE explained that the individual could not perform the occupation of garment sorter because it required frequent (and not occasional) near acuity. (Tr. 421-22).

Over Plaintiff's counsel's objection, the ALJ then questioned the VE on whether there were other unskilled jobs that someone with Plaintiff's vocational profile and RFC could perform. (Tr. 420-23). The VE testified that given these factors, the individual could perform the requirements of ticket distributor (DOT 221.667-010; 3760 jobs/272,910 jobs); room service clerk (DOT

324.577-010; 160 jobs/18,410 jobs); and garment bagger (DOT 920.687-018; 9850 jobs/666,860 jobs). (Tr. 423). At the end of the hearing, the ALJ agreed to hold the record open so Plaintiff could submit additional vocational evidence from Benson Heckler, Ph.D, a vocational expert with Rehabilitation Associates. (Tr. 431-32).[4]

Consistent with his hypothetical to the VE in the second hearing, the ALJ changed the RFC in his decision and found that Plaintiff

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant was precluded from jobs requiring climbing ropes and ladders and he must avoid moving machinery. He is unable to perform jobs requiring depth perception or use of vision of the right side, is limited to occasional near visual acuity and no working with crowds of people.

(Tr. 405). Thus, the RFC changed from finding that Plaintiff was unable to perform jobs requiring fine visual acuity, to finding that Plaintiff is limited to occasional near visual acuity. Nevertheless, even under this amended RFC, the ALJ found, based upon the VE's testimony, that Plaintiff would not be able to perform the job of garment sorter as previously determined because, according to the DOT, that job required frequent near accuity. (Tr. 407). However, because the VE was able to identify other jobs in significant numbers in the national economy that Plaintiff could perform, the ALJ found that Plaintiff was not disabled. (Tr. 407-08).

Plaintiff argues that the ALJ erred in changing Plaintiff's RFC and eliciting additional testimony from the VE regarding other jobs Plaintiff could perform once the VE testified that Plaintiff could not perform the job of garment sorter. Plaintiff argues that this court's order remanding the case to the ALJ limited the scope of the ALJ's duties to either (1) explaining and,

---

[4]These newly identified jobs and Dr. Benson's testimony are discussed below with respect to Plaintiff's second allegation of error.

if possible, resolving the conflict between the VE's testimony and the DOT regarding the garment sorter job or (2) finding that the Plaintiff was unable to perform any jobs in the national economy. Defendant argues that the ALJ complied with the court's order, and that Plaintiff's interpretation of the order is inconsistent with the law, which requires that an individual be found disabled only if he is unable to make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). Defendant argues that the ALJ only clarified the RFC and that the clarification, if error, was harmless. Defendant further argues that the VE at the 2009 hearing, by identifying three jobs, identified only a sampling of jobs he believed could be performed by someone with the limitations set forth in the hypothetical.

The Supreme Court has noted that a district court's remand order in a social security case "will often include detailed instruction concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed." Sullivan v. Hudson, 490 U.S. 877, 885 (1989). "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." Id. at 885-86 (citing Hooper v. Heckler, 752 F.2d 83, 88 (4th Cir. 1985); Mefford v. Gardner, 383 F.2d 748, 758–759 (6th Cir. 1967)). Courts within this circuit have held that an ALJ's failure to remain within the scope of the district court's remand order constitutes error and requires a second (or third) remand. See, e.g., Myers v. Colvin, No. 4:14-cv-32, 2015 WL 3830972 (E.D.Va. June 18, 2015); Berry v. Astrue, No. 3:05–1170, 2008 WL 927546, at *2–3 (S.D.W.Va. April 4, 2008).

The Myers court included a thorough discussion of the applicable law in finding that the ALJ erred when he, upon remand from the district court, assigned a new RFC rather than

addressing the errors found by the district court regarding his analysis of the plaintiff's credibility[5] and his failure to resolve a discrepancy between the VE and the DOT. Myers, 2015 WL 3830972 at *17. The court noted that the appropriate legal doctrine to consider is the mandate rule, which "is merely a specific application of the law of the case doctrine, [which] in the absence of exceptional circumstances, [ ] compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." Id. at *16 (citing U.S. v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (internal quotations omitted). "Thus, upon remand, the trial court is required to 'implement both the letter and the spirit of the mandate, taking into account the [District Court's] opinion and the circumstances it embraces.'" Id. (citing Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3rd Cir.1985)). After noting that the Fourth Circuit had not specifically addressed this issue[6] and discussing case law both within and outside the circuit, the court determined that "the appellate court need not have expressly decided the issue for it to have binding force on the trial court; rather, the issue need only have been 'necessarily implicated' in the appellate court's decision." Id. at *18. For example, in Berry v. Astrue, No. 3:05–1170, 2008 WL 927546 (S.D.W.Va. April 4, 2008), after the district court remanded for the purpose of reconsidering the claimant's mental impairments, the ALJ also reevaluated the claimant's physical impairments. Id. at *4. The initial ALJ had previously

---

[5]The court recognized that a change in the credibility analysis could reasonably result in a change to the RFC. Myers, 2015 WL 3830972 at *17. However, the ALJ did not change his credibility analysis at all and, thus, the court found there was no basis for him to reconsider the RFC. Id.

[6]The court did note that the Fourth Circuit has held that an issue "expressly" decided by the district court may not be relitigated by the ALJ. Id. at *18 (citing Hooper v. Heckler, 752 F.3d 83, 84-85 (4th Cir. 1985)).

determined that the claimant could perform only sedentary work, while the ALJ after remand determined that the claimant could perform light work. Id. The court held that the ALJ was foreclosed from reconsidering the claimant's physical RFC when the remand order directed him to "obtain additional evidence about, and to reevaluate, claimant's mental impairment(s)," and "[t]here was no direction given to the Commissioner relative to his physical impairments or residual functional capacity." Id. at *2-3. The court in Myers stated that "[t]he very sequential nature of the ALJ's determination" lends itself to the conclusion that a finding made in one step is necessarily implicated in any error identified in any subsequent step because the findings in each step build off the analysis of those before. Id. at *19.

While the parties here focus on the ALJ's decision to seek additional testimony from the VE regarding other jobs Plaintiff could perform, the undersigned is troubled with the other issue raised by Plaintiff, that is, the fact that the ALJ changed Plaintiff's RFC, potentially to his detriment, by providing less restrictions than that initial, unchallenged RFC. Here, as in Myers, the only error found upon Plaintiff's first appeal to this court was the ALJ's failure to address the discrepancy between the testimony of the VE and the DOT. In fact, this was the only error raised by Plaintiff in his appeal. The undersigned remanded the case solely for the purpose of addressing that discrepancy. However, the ALJ went outside the scope of that remand by changing Plaintiff's RFC.

As set forth above, the original RFC included the limitation that Plaintiff was "unable to perform jobs requiring . . . fine visual acuity." (Tr. 20-21). The new RFC provides that Plaintiff "is limited to occasional near visual acuity." (Tr. 405). Defendant characterizes the change as merely a clarification of the visual limitations as requested by the VE. See Def. Resp. p. 6.

However, while the ALJ did change the word from "fine" to "near" based upon the VE's request for clarification and his testimony that the DOT uses the word "near" rather than "fine," the ALJ reduced the restriction by adding "occasionally" on his own. (Tr.420-21).[7] This addition is not simply a clarification, but makes the new RFC less restrictive than the original RFC, which was outside of the purpose for the remand.

Defendant argues that if the change in the RFC was error, it was harmless and does not require remand. See Ngarurih v. Ashcroft, 371 F.3d 182, 190, n.8 (4th Cir. 2004) (reversal of administrative ruling is unnecessary if the error was harmless). The additional jobs identified by the VE, which Plaintiff argues itself was error, all listed near visual acuity as "not present." See DOT, Work-Ticket Distributor, 1991 WL 672062; Room-Service Clerk, 1991 WL 672789; and Bagger, 1991 WL 687965. Thus, Defendant argues, the change in the RFC was harmless because the same jobs would have been identified even if the ALJ had kept the "unable to perform jobs requiring . . . fine visual acuity" language. However, Defendant's harmlessness argument includes an assumption about how the VE will testify. "Information contained in the DOT is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." English v. Shalala, 10 F.3d 1080, 1084–85 (4th Cir.1993) (citing DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir.1983)). In fact, Plaintiff's expert, Dr. Heckler, testified that none of these jobs could be performed by a person with the original RFC identified by the ALJ. (Tr. 608-28). Thus, the court cannot conclude that the change in the RFC, which was outside the scope of the remand order, was harmless.

---

[7]This testimony reveals that the ALJ's use of the word "fine" is consistent with the DOT's use of the word "near." (Tr. 421).

Plaintiff also argues that the ALJ's decision to elicit additional testimony from the VE regarding other jobs Plaintiff could perform fell outside the scope of the remand order and was, thus, error. The ALJ addressed his decision to do so in his hearing decision:

> The claimant argues that according to the District Court Order, if I find that he cannot perform the garment sorter job, I must find that he is disabled. I disagree. I interpret the Court's language regarding 'resolving the conflict' to mean that I should determine if the garment sorter job could be performed by someone with the claimant's residual functional capacity, or if not, if there are other jobs which the claimant could perform. I come to this conclusion because, under the regulations, the Administrative Law Judge is required to find a claimant not disabled if he can make an adjustment to other work 20 C.F.R. [§] 404.1520(a)(4)(v). If the Court Order were interpreted to mean that the claimant should be found disabled if he could not perform the garment sorter job even if there were other jobs he could perform, it would be inconsistent with the regulations.

(Tr. 403). Thus, Defendant argues that, by finding Plaintiff could not perform the occupation of garment sorter and then asking the VE for other jobs, the ALJ did not ignore the portion of the remand order which required him to "find that the Plaintiff is unable to perform any jobs in the national economy." (Tr. 454). Rather, he simply did not reach that step because he "resolve[d] the conflict" by finding other jobs. (Tr. 454). While the undersigned does not necessarily agree with the ALJ's characterization that in reaching the "other jobs" issue, he was simply resolving the conflict, nevertheless, the ALJ did not go outside the spirit of the remand order when he asked the VE for additional testimony as to whether there were other jobs in the national economy that Plaintiff could perform. Although it could have been worded more carefully, the court's direction that the ALJ should, if he was unable to resolve the conflict, "find that the Plaintiff is unable to perform any jobs in the national economy" contemplates that Plaintiff is "unable to perform any jobs in the national economy." This, in turn, contemplates that the ALJ will question the VE about whether there were any other jobs Plaintiff could perform because the ALJ cannot come to that

conclusion on his own. See, e.g., Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir.1983). As noted by the ALJ in his decision, "if the Court Order were interpreted to mean that the claimant should be found disabled if he could not perform the garment sorter job even if there were other jobs he could perform, it would be inconsistent with the regulations." (Tr. 403). Thus, the ALJ did not err by soliciting additional evidence from the VE, although the VE testimony presented in the second hearing was not accurate because it was based upon the amended RFC, which, as discussed above, was error.

"If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling 'with or without remanding the cause for a rehearing.' " Radford v. Colvin, 734 F.3d 288, 296 (4th Cir. 2013) (citing 42 U.S.C. § 405(g)). It is appropriate to reverse without remanding for further proceedings if "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and ... reopening the record for more evidence would serve no purpose." Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir.1974). Here, reopening the record would serve the purpose of allowing the VE to provide the testimony that was originally anticipated from the first remand order, that is, whether there are other jobs in the national economy that can be performed by someone with the original RFC. Indeed, "this circuit requires remand when an ALJ has relied on improper VE testimony." Walls v. Barnhart, 296 F.3d 287, 291 (citing English v. Shalala, 10 F.3d 1080, 1084-85 (4th Cir. 1993)). Therefore, remand for further proceedings rather than an award of benefits is proper here.     In sum, the ALJ erred by going outside the scope of original remand order when he amended Plaintiff's RFC, but he did not err by eliciting additional testimony from the VE regarding whether there are other jobs in the national economy which

Plaintiff can perform. Thus, upon this second remand, the ALJ shall present to the VE the hypothetical based on the RFC originally found in the first hearing decision and elicit from the VE whether there are jobs available in the national economy that Plaintiff could perform.[8]

### III.  CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case is REMANDED to the Commissioner for further administrative action as set forth above.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

September 27, 2016
Florence, South Carolina

---

[8] During the telephone conference on September 22, 2016, the parties were invited to submit authority as to whether it is appropriate to award benefits or to remand when the "sampling" of jobs identified by a VE at Step 5 turns out to be inconsistent with the RFC established by the ALJ. Neither party submitted a supplemental brief.